IN THE UNITED STATES DISTRICT FOR EASTERN OF TENNESSEE
AT GREENVILLE

JOE PEPPERS and NATASHA PEPPERS,
as surviving natural parents and
next of kin of STEWART PEPPERS,
deceased,

    Plaintiffs,

v.

WASHINGTON COUNTY, TENNESSEE,
et al,

    Defendants.

No. **2:13-CV-180**
JUDGE GREER
MAGISTRATE CORKER
JURY DEMAND

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERTS FERSLEW AND MASH

Come now the Plaintiffs, by and through counsel, and submit this memorandum of law in support of their Motion to Exclude opinions of Kenneth E. Ferslew, PhD. and Deborah C. Mash, PhD., Defendants' expert witnesses and would state as follows:

### I.    STANDARD OF REVIEW

Under the standards first articulated by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the purported expert testimony of Kenneth E. Ferslew, PhD. and Deborah C. Mash, PhD., are inadmissible at trial, and therefore, it is respectfully requested that this Court bar Defednants' purported expert from testimony at trial in this case.

In Daubert, the Supreme Court established the standard for admissibility of expert testimony under Federal Rule of Evidence 702, which provides: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a

1

fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702; see Daubert, 509 U.S. at 589-91.

In cases in which expert testimony is offered, the trial judge must act as a gatekeeper, admitting only that expert testimony that is both reliable and relevant. Daubert, 509 U.S. at 589. In this role, a district court must assess the validity of the reasoning and methodology underlying the proffered testimony and the application of that reasoning and methodology to the facts. Id. at 592-93. This assessment ensures that the testifying expert applies the same "intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

In order to present testimony regarding a particular subject matter, an expert witness "must first establish his expertise by reference to 'knowledge, skill, experience, training, or education.'" Pride v. BIC Corp., 218 F.3d 566, 577 (6th Cir. 2000) (quoting Fed. R. Evid. 702). A witness is not expert merely because he claims to be. Pride, 218 F.3d at 577. Even if qualified as an expert, the witness may not present testimony which is based on insufficient facts or in which the asserted connection between the facts and the expert's opinion is too tenuous. Such testimony is unreliable and, therefore, inadmissible. See Greenwell v. Boatwright, 184 F.3d 492, 497 (6th Cir. 1999); Glaser v. Thompson Med. Co., Inc., 32 F.3d 969, 972 (6th Cir. 1994). Additionally, the testimony to be presented must be sufficiently relevant to "assist the trier of fact in understanding and disposing of issues relevant to the case." Pride, 218 F.3d at 578. The

expert witnesses proffered by Defendant does not meet these standards and should not be permitted to testify at the trial of this case.

## II.     DEFENDANTS' EXPERT KENNETH E. FERSLEW

Defendants' expert Kenneth E. Ferslew, PhD. opines that the decedent smoked marijuana with in four hours of his death. He reached this determination after performing two different analysis of the decedent blood. The first of which was performed by the Johnson City Medical Center where the decedent was taken to the emergency room directly from the jail. His initial laboratory tests found no drugs detected in the blood, vitreous acetone, and found the decedent's urine was positive for cannabinoids. The decedent's blood samples were then further tested by NMS Labs of Willow Grove, PA. Further testing revealed once again that the decedent's blood tested negative for cocaine and metabolites, amphetamines, anticonvulsants, antidepressants, antipsychotic agents, benzodiazepines, CNS stimulants, hallucinogens, hypnosedatives, hypoglysemics, muscle relaxants, non-steroidal anti-inflammatory agents, opiates and opioids. It also tested negative for bath salts, stimulant designer drugs and synthetic cannabinoids. With regard to the cannabinoids in the blood of the decedent, the NMS Labs reported the Delta 9 – THC (active ingredient of Marijuana) was 1.5 ng/ml with a reporting limit of 1.0 ng/ml and according to their reference, passive inhalation is only up to 2 ng/ml. The Delta -9 Carboxy THC (inactive ingredient of Marijuana) reports the decedent levels were at 5.6 ng/ml with a reporting limit of 5.0 ng/ml. The 11-Hydroxy Delta 9 – THC (active metabolite) in the decedent's blood was negative with a reporting limit of 5.0 ng/ml and according to the reference are usual peak levels (adjusted less than 10% of THC levels after smoking).

Despite the aforementioned results, Mr. Ferslew opines that the decedent smoke marijuana within four hours of his death. Not to mention, this not supported by the toxicology

reports, but the decedent was being housed in the booking area, in single cell, where he could be monitored by the corrections officers. (See Affidavits. Doc. 17, 19, 22, 23, 24, 25). In none of these affidavits, did any jail personnel report the smoking of marijuana by the decedent, as they describe the movements, actions, and statements of the decedent with great detail.

Under the Daubert decision, an expert must meet the three requirements of (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Mr. Ferslew's opinion is not supported by the data and lacks support of testimony of the very people who were in constant contact with the decedent.

For these reasons the Plaintiffs' would respectfully move that the opinion testimony of Mr. Ferslew be barred.

### III. DEFENDANTS' EXPERT DEBRA C. MASH

The Defendants' disclosed as a medical expert, Debra Mash, PhD. as an expert in the condition known as "excited delirium" as it relates to the decedent. A brief summary of her work in this regard was attached to Defendants' expert disclosures, without any curriculum vitae, expert report, compensation rate, list of cases in which she has given testimony or depositions within the last four years, and publications within the last ten years, all of which is required under Rule 26 of the Federal Rules of Civil Procedure. To the extent that Rule 26 has not been complied with, and if Ms. Mash were to be required to comply with this rule, the Plaintiffs' would object to her expert opinion.

Further, the Plaintiffs' would argue that Ms. Mash is not qualified to render any medical opinions as she is not a medical doctor but is quite simply a scientific researcher, without any medical training in the fields of Pathology and would therefore be disqualified to render an

4

forensic opinion. Federal Rule of Evidence 702 requires that her knowledge, skill, training and experience qualifies her to give her to give her opinion to assist the trier of fact. It would appear that she is lacking in her ability render such a diagnosis.

After a review of the references attached to Ms. Mash's study, it should be noted that her usual connection of "excited delirium" has generally been to drugs of stimulant variety such as cocaine, and has not ever been associated with marijuana or steroids until now. This brings to question the expert's principles and methodology under *Daubert*.

With regard to acceptance within the medical community, the diagnosis of "excited delirium" is not recognized as a diagnostic entity by the American Medical Association, American Psychological Association, World Health Organization, nor is it listed as such in Diagnostic and Statistical Manual of Mental Disorder. "[A] known technique that has been able to attract only minimal support within the community," *Downing*, *supra*, at 1238, may properly be viewed with skepticism. *United States* v. *Downing*, 753 F. 2d, at 1238. (See attached Affidavit of L.J. Dragovic)

## IV. CONCLUSION

For the foregoing reasons stated herein, the Plaintiffs respectfully move to exclude the testimony of Kenneth Ferslew and Debra Mash pursuant to Federal Rules of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

**Respectfully Submitted**, this 3rd day of August, 2015.

**BY:** /s/Patrick L. Looper
**PATRICK L. LOOPER  BPR 020857**
**RUSSELL T. GREENE   BPR018382**
**Attorney for Plaintiffs**
First Tennessee Plaza
800 S. Gay Street, Suite 2000
Knoxville, Tennessee 37929
865/522-3616

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing document has been served upon counsel for all parties at interest in this cause by placing a true and exact copy of said document, addressed to said counsel listed below, via U.S. Mail with sufficient postage thereupon to carry the same to its destination, via email, via facsimile, via hand delivery, via email or via express delivery.

JEFFREY M. WARD, BPR # 016329
THOMAS J. GARLAND, JR., BPR # 011495
MILLIGAN & COLEMAN PLLP
P. O. Box 1060
Greeneville, TN 37744-1060
423 639-6811
423 639-0278 facsimile
jward@milligancoleman.com
tgarland@milligancoleman.com

This 3rd day of August, 2015.

**BY:** /s/Patrick L. Looper
**PATRICK L LOOPER**

6