IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
TENNESSEE AT GREENEVILLE

| | |
|---|---|
| JOE PEPPERS and NATASHA PEPPERS, as surviving natural parents and next of kin of STEWART PEPPERS, deceased, <br><br> Plaintiffs, <br><br> v. <br><br> WASHINGTON COUNTY, TENNESSEE, et al <br><br> Defendants. | ] <br> ] <br> ] <br> ] <br> ] <br> ] <br> ] No. 2:13-cv-0180-JRG-MCLC <br> ] JURY DEMAND <br> ] <br> ] <br> ] <br> ] |

## FINAL PRETRIAL ORDER

Come the parties, by and through counsel, and submit the following proposed Final Pretrial Order pursuant to Rule 26 of the Federal Rules of Civil Procedure and the Court's Scheduling Order [Doc. 48, PageID #: 472-74]:

(1) *Jurisdiction*: This is an action for violation of constitutional rights pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §1331 and 28 U.S.C 1343.

(2) *Admissions and Stipulations:*

   a. Plaintiffs' decedent, Stewart Peppers, was arrested for multiple criminal charges and incarcerated in the Washington County Detention Center for approximately three and a half days prior to the altercation that is the subject matter of the instant case.

   b. Plaintiffs' decedent was 22 years old.

   c. Plaintiffs' decedent was booked into the Washington County Detention

Center on April 26, 2013 at approximately 2:25 a.m.

d.  Plaintiffs' decedent was 5'11" and weighed approximately 235 lbs.

e.  Plaintiffs' decedent was a bodybuilder.

f.  Plaintiffs' decedent was charged with two additional counts of vandalism while incarcerated in the Washington County Detention Center.

g.  Plaintiffs' decedent was observed engaging in strange behavior during the time that he was incarcerated in the Washington County Detention Center.

h.  The altercation that is the subject of this cause of action occurred on April 29, 2013 at approximately 5:25 p.m.

i.  During the altercation that is the subject of this cause of action, Stewart Peppers was housed alone in cell #6 in the booking area of the Washington County Detention Center.

j.  During the altercation that is the subject of this cause of action, Shawn Dorsey and Antonio Mayo were housed in cell #13 in the booking area of the Washington County Detention Center.

k.  During the altercation that is the subject of this cause of action, Eric Bradford was housed in the booking area of the Washington County Detention Center.

l.  During the altercation, the Plaintiffs' decedent was tased and sprayed with a chemical weapon.

m.  During the altercation, the defendant officers attempted to restrain Plaintiffs' decedent in a restraint chair.

**(3)** <u>Plaintiffs' theory</u>: Stewart Peppers was incarcerated in the Washington County Detention Center on April 29, 2013. At approximately 5:25 p.m., Mr. Peppers was being rude and obnoxious toward many of the Defendant Detention Officers to the point that the Defendant Officers became irritated. Defendants entered the decedent's cell where he was being housed alone ostensibly to quell a disturbance. Defendant Officers, without cause during the assault tazered and sprayed the decedent with a chemical weapon, but these weapons were ineffective and the Defendant officers escalated the assault, that involved the Defendant Officers Garmer, Lowe, Cornett, Martin and Draper gaining control of Mr. Pepper by handcuffing, and using leg shackles.

While Mr. Peppers was restrained he was kicked multiple times on the ground by the Defendant officers. Defendants placed the decedent in a restraint chair where the assault continued. While the decedent was restrained in the restraint chair Defendant Officer Jason Lowe continued to punch the restrained decedent in the presence of the other Defendant officers. The decedent became unresponsive and EMS was called and emergency lifesaving efforts were attempted but were not productive.

It is the Plaintiff's theory that Mr. Peppers constitutional rights were violated by the brutal beating he endured at the hands of the Defendant Officers. It is the Plaintiff's theory that his constitutional rights were violated by this beating caused by the Defendant Officer, all of which is in violation of the United States Constitution's prohibition against cruel and

unusual punishment guaranteed by the 8th Amendment which is analogous to the 14th Amendment since Mr. Peppers was a pretrial detainee.

Defendants' theory: On the evening of April 25, 2013, Stewart Peppers was acting in a delusional manner. He attacked his father and brother who had come to check on him and threatened them with a gun. After that, he entered another apartment in the building, demanded drugs, and assaulted and severely beat the resident. Then that same evening, he vandalized a BMW, and then attempted to carjack a female motorist as she was driving by him.

Shortly before 2:00 a.m., officers with the Johnson City Police Department encountered Mr. Peppers who took off running. Mr. Peppers was caught down the street. He was arrested and transported to the Washington County Detention Center. At the time of his arrest, he had a .38 caliber handgun, 47 grams of marijuana, and 300 milligrams of Nandrolone Decanoate (a steroid).

When Mr. Peppers was booked into the Washington County Detention Center, he continued acting strangely. Mr. Peppers refused to respond to his real name. Instead, he referred to himself as "Hercules" and called himself the "chosen one" or the "son of God" or the "son of Zeus". He displayed no concern over being booked into jail and instead, acted in an arrogant and aggressive manner toward the correctional officers.

Mr. Peppers was not bailed out by his family, but instead he remained in the jail from April 26th through April 29th. During that time, Mr. Peppers sometimes acted normally, but at other times, he exhibited a variety of strange behavior. A mental health evaluation was performed on him by a social worker from Frontier Health who determined that he did not meet the criteria for commitment to a mental health facility. At times, Mr. Peppers was in

his cell flexing his muscles without his shirt on, doing pushups and situps, and chanting like a warrior. On one occasion, he tore up his mat to make an air filter. On another occasion, he tore up his mat and a red uniform top to make bracelets, a necklace, and a headband. In the early morning hours of April 29, 2013, it was noted that Peppers was whistling, asking unusual questions, and was naked in his cell.

On the evening of April 29, 2013, Mr. Peppers began yelling and cursing at female inmates and correctional officers who entered the jail. Officers attempted to get him to calm down but he became more crazed and began banging his head on the door of his cell. The defendant officers determined that Mr. Peppers must be restrained to prevent him from seriously injuring himself.

Because of Mr. Peppers' size and his potential for violence, five male officers entered Mr. Peppers' cell and two female officers stood ready to assist as necessary. Lt. Jason Lowe entered with his Taser drawn and ready based upon the potential threat posed by Mr. Peppers. Instead of complying with verbal instructions, Mr. Peppers attacked the officers.

Lt. Lowe tased Mr. Peppers, but the Taser did not stop him. Mr. Peppers threw one officer aside, struck another officer and then tried to choke an officer. The officers grabbed Mr. Peppers and began wrestling with him to try to control him. Lt. Lowe tased Mr. Peppers again and then sprayed him in the face with his chemical agent. But that did not stop Mr. Peppers.

The officers continued to wrestle with Peppers on the concrete floor, but due to his strength and ferocity, they could not get him under control and he would not stop struggling against them. The officers were able to get shackles on Mr. Peppers and then they put him

on a restraint chair and tried to strap him into it. Mr. Peppers continued fighting against those efforts until he suddenly stopped fighting.

A jail nurse had been called to the scene when the Taser was used, but she had been unable to check on Mr. Pepper's because of his continued resistance. Once Mr. Peppers stopped fighting, the nurse proceeded to examine him. She determined that he did not appear to be breathing. Mr. Peppers was placed on the floor and resuscitation efforts were attempted. EMS came and transported Mr. Peppers to the hospital but he could not be revived.

An autopsy was conducted on Mr. Peppers by the State of Tennessee. The medical examiner determined that the sudden and unexpected death of Mr. Peppers was due to a condition known as excited delirium. Excited delirium is a brain disorder that results from neurochemical changes in the brain and is usually drug-related but can occur in non-drug users as well. Excited delirium causes a variety of symptoms including bizarre or aggressive behavior, unexpected physical strength, shouting, paranoia, increased pain tolerance, and a lack of normal exhaustion. Many people suffering from this condition experience cardiorespiratory arrest and death because they fight and struggle against restraint beyond the physical capacity of the body to do so.

The plaintiffs filed this lawsuit alleging that the defendant correctional officers intentionally beat Mr. Peppers to death. Based upon the evidence presented to the Court before this trial, the Court has already determined that the correctional officers did not beat Mr. Peppers to death.

Even though the Court has determined that the officers are not responsible for Mr. Peppers' death, the plaintiffs continue to claim that the defendant officers violated Mr.

Peppers' constitutional rights by using excessive force.  Therefore, the issue for the jury is whether the defendant officers used excessive force - that did not cause Mr. Pepper's death.  To find the defendants liable for a constitutional violation, the plaintiffs have to prove that the defendants did more than negligently or accidently cause harm to Mr. Peppers.  Instead, they have to prove that the defendant officers used force that was not reasonable and that any law enforcement officer would have known that the force was unreasonable.

The plaintiffs claim that the defendant correctional officers punched and kicked Mr. Peppers when he was not resisting them.  However, the defendants assert that Mr. Peppers violently resisted the officers' efforts to restrain him until he abruptly stopped fighting.  The officers did not use any force against him when he stopped resisting.  During the altercation, the officers used only non-lethal force in the form of a Taser, a chemical agent, and hands-on techniques.  They did not use batons, guns or other weapons that would be expected to cause severe injuries.  Additionally, the evidence will show that Mr. Peppers had no broken bones or cartilage and no evidence of internal injuries.

The defendant officers assert that the force they used was clearly reasonable and that they did not use any force that a reasonable officer would have considered excessive or unnecessary.  The defendants assert that the plaintiffs are not entitled to recover any damages in this case.

**(4)** *Contested Issues of Law*:

   a. All issues raised by the parties in their motions in limine.

   b. Whether the defendants are entitled to qualified immunity based upon the facts as determined by the jury.

**(5) Damages**:  The parties are unable to stipulate to damages in this case.

(a) Plaintiffs assert that they are entitled to damages as follows: The Plaintiffs' respectfully submit that the Defendants' are liable to the Plaintiffs' for three million dollars for the pain and suffering of Plaintiffs' decedent, and are liable for one million dollars in punitive damages, plus attorneys' fees, discretionary costs and expenses and court costs.

(b) Defendants deny that the plaintiffs are entitled to recover any damages. However, if damages are awarded for the alleged excessive force, those damages should be limited to the conscious pain and suffering of Stewart Peppers for the time period from the use of force to his death. There is no claim for medical expenses, lost earnings or other economic damages. With respect to the plaintiffs' claim for punitive damages, the defendants assert that the trial should be bifurcated pursuant to Federal Rule of Civil Procedure 42(b), with the jury first deciding whether the plaintiffs are entitled to punitive damages and then the jury determining the amount, if any, of punitive damages in a second subsequent trial immediately following the jury's initial verdict.

**(6)** *Other Matters*: Other Trial Information and Other Matters.

   *a.* That the pleadings conform to the pretrial order.

   *b.* Estimated length of trial (in working days) – 3 days.

   *c.* Possibility of settlement is poor.

APPROVED FOR ENTRY:

   */s/Patrick L. Looper*_____
  **PATRICK L. LOOPER   BPR#020857**
  **RUSSELL T. GREENE   BPR#018382**

**Attorneys for the Plaintiffs 800 S. Gay Street, Suite 2000
Knoxville, Tennessee 37929
865/522-3616**

*/s/Jeffrey M. Ward*
**JEFFREY M. WARD, BPR # 016329
THOMAS J. GARLAND, JR., BPR # 011495
MILLIGAN & COLEMAN PLLP
P. O. Box 1060
Greeneville, TN 37744-1060
423 639-6811
423 639-0278 facsimile
jward@milligancoleman.com
tgarland@milligancoleman.com**